*1223 OPINION
By the Court,
Young, J.:
Appellant Corky Desimone (“Desimone”) was arrested for possession and sale of methamphetamine. Desimone was assessed a tax and penalties in the amount of $166,000 pursuant to NRS chapter 372A for illegal possession of a controlled substance. The State reduced this amount to judgment. Desimone was then convicted in a bench trial of one count of possession of a trafficking quantity of a controlled substance. Desimone appeals his conviction, presenting two arguments: (1) the district court erred in convicting him, because the criminal conviction is a second punishment barred by the Double Jeopardy Clause; and (2) in the alternative, the case must be remanded for a hearing to determine whether the taxes and penalties imposed by the State pursuant to NRS chapter 372A constitute punishment sufficient to implicate the Double Jeopardy Clause. For the reasons discussed herein, we reverse Desimone’s conviction, but conclude that remand is unnecessary.

FACTS

On August 1, 1992, shortly after Desimone was released from prison in California, undercover officers arrested Desimone after he provided three ounces of methamphetamine in exchange for what Desimone believed to be stolen property. Desimone was charged with five violations of NRS chapter 458, all involving the possession and sale of methamphetamine. On January 28, 1993, the Nevada Department of Taxation (“the Department”) filed a claim against Desimone in the amount of $166,000 in unpaid taxes and civil penalties pursuant to NRS chapter 372A, entitled “Tax on Controlled Substances.” This statute forbids a person to “sell, offer to sell or possess with the intent to sell a controlled substance” unless he registers with the Department and pays a tax on that controlled substance. NRS 372A.070. The term “sell” is defined broadly to include “exchange, barter, solicitation or receipt of an order, transfer to another for sale or resale, possession or transportation in contravention of this chapter and any other transfer for any consideration or a promise, obtained directly or indirectly.” NRS 372A.040. The tax does not apply “to any person who is registered or exempt from registration *1224 pursuant to NRS 453.226 or any other person who is lawfully in possession of a controlled substance.” NRS 372A.060. Those exempt from the provisions of the statute include the ultimate user in possession of a controlled substance pursuant to a lawful order of a physician, in addition to manufacturers, distributors, and dispensers of those controlled substances. NRS 453.226. On May 20, 1993, the district court entered judgment against Desimone in favor of the Department for the entire amount of $166,000.
On September 22, 1993, Desimone was convicted of one count of possession of a trafficking quantity of a controlled substance. He was sentenced to fifteen years imprisonment and fined $100,000. Desimone appealed, claiming that the criminal conviction constituted a second punishment in violation of the Double Jeopardy Clause of the United States and Nevada Constitutions.

DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be “subject for the same offense to be twice put in jeopardy of life or limb.” U.S. Const, amend. V.[1] This protection is afforded the citizens of Nevada through the Fourteenth Amendment and the Nevada Constitution itself. See Nev. Const, art. I, § 8. The Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440 (1989). The third abuse is at issue in this case, an abuse which “can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.” Id. at 447.[2] Considering this admonition, *1225 we must determine whether taxes and penalties imposed on, but not paid by, Desimone under NRS chapter 372A for possession of methamphetamine constitute “punishment.”

Whether a tax levied pursuant to NRS 3 72A constitutes a penalty for purposes of double jeopardy analysis

A civil penalty is considered “punishment” for double jeopardy purposes when that penalty does not solely “serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes.” Halper, 490 U.S. at 448; accord Austin v. United States, 509 U.S. 602, 610, 113 S. Ct. 2801, 2806 (1993) (holding that forfeiture is a punishment if it does not serve solely remedial purposes). It is these “purposes actually served by the sanction in question . . . that must be evaluated.” Halper, 490 U.S. at 447, n.7 (emphasis added).
Whether a tax constitutes a punishment, triggering protections of the Double Jeopardy Clause, was recently answered by the United States Supreme Court in Dep’t of Revenue of Montana v. Kurth Ranch,......U.S......., 114 S. Ct. 1937 (1994). There, the Court concluded that a tax on the possession of illegal drugs assessed after the State of Montana imposed a criminal penalty for the same offense constituted double jeopardy. Id. at......, 114 S. Ct. at 1948. In Kurth Ranch, a family of Montana farmers supplemented its income by cultivating a significant marijuana crop. Id. at......, 114 S. Ct. at 1942. Montana law enforcement officers raided the farm, prosecuted family members, and then *1226 attempted to collect a state tax imposed for possession and storage of dangerous drugs. Id. at......, 114 S. Ct. at 1941-43. The tax totalled $181,000, a figure arrived at by placing a $100-an-ounce tax on 1,811 ounces of marijuana harvested by the farmers. Id. The farmers declared bankruptcy, and the state’s claim for the tax was denied by the bankruptcy court on double jeopardy grounds. Id. The bankruptcy court’s decision was affirmed by the district court, the United States Court of Appeals for the Ninth Circuit, and finally by the United States Supreme Court. Id. at......, 114 S. Ct. at 1943-44.
The Court concluded that a tax is not immune from double jeopardy scrutiny, id. at......, 114 S. Ct. at 1946, even though in most cases a state may legitimately tax criminal activity. See Marchetti v. United States, 390 U.S. 39, 44 (1968). Rather than focus on whether a state purpose was accomplished by enforcement (i.e., actual payment of a fine), the Court in Kurth Ranch considered the underlying motivation of the state tax statute to determine the “purposes actually served” by the State’s enforcement action. The Court considered the following factors in concluding that the Montana tax was primarily designed to punish rather than to raise revenue: (1) the high rate of taxation — eight times the street value of the confiscated marijuana; (2) the deterrent purpose, based on the use of tax revenues for anti-crime initiatives; (3) the requirement that the tax be imposed solely upon criminal activity, such as illegal marijuana growing; and (4) the imposition of the tax upon goods which were neither owned nor possessed by the debtor. Kurth Ranch,......U.S. at......, 114 S. Ct. at 1946-48. The Court concluded that these factors, taken as a whole, indicated that the drug tax was “too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis.” Id. at......, 114 S. Ct. at 1948.
As Kurth Ranch makes clear, the crucial inquiry in determining whether jeopardy attaches to tax statutes probes the state’s intentions. Kurth Ranch identified characteristics of the state’s enactment and prosecution of the tax statute to test objectively if the state intended punishment. Whether actual punishment occurred in each individual case was not part of the inquiry. A requirement of actual punishment would require a factual review after every prosecution to reveal what, if any, payment a defendant has made toward the fine. Further, a determination must be made of how great partial payment must be for jeopardy to attach. This approach could only lead to a greater number of appeals and the absurd result of defendants frustrating future criminal prosecution by paying a minimum amount pursuant to tax statute liability. *1227 Kurth Ranch wisely refrained from adding actual punishment to the jeopardy formula, and we consider that guidance sound.
NRS chapter 372A exhibits the same punitive aspects as the Montana illegal drug tax. First, the Nevada law imposes a $1,000 per-gram fee for methamphetamine (and a $100 per-gram fee for marijuana). See NRS 372A.070. This amount far exceeds the high rate of taxation condemned in Kurth Ranch. See NRS 372A.070.
Second, potential tax proceeds are earmarked to pay for anti-crime measures, as were the proceeds of the tax analyzed in Kurth Ranch. See NRS 372A.110.
Third, the tax is designed to punish criminal activity. As Desimone points out, pharmaceutical companies, pharmacists, and medical practitioners are exempt from the tax. See NRS 453.226. Thus, although criminal activity is not strictly required before the tax is imposed, the non-criminal possession and sale of controlled substances by legitimate manufacturers, distributors, and ultimate users fall outside the scope of the tax. See NRS 372A.060(1). In fact, legislators contemplating initial passage of NRS chapter 372A “seriously doubted” whether any drug dealer would actually register under the statute. Minutes of the Senate Taxation Committee, 64th Sess. 3 (March 12, 1987). The sponsor of the legislation agreed, adding that the “intent was to use the proposed law as a way to gain an advantage over drug dealers.” Id. The retroactive use of the tax to punish, rather than to seek registration of controlled substances, is the manifest intent of NRS chapter 372A.
Fourth, the methamphetamine confiscated by the State, like the marijuana confiscated in Kurth Ranch, was not in the possession or ownership of the defendant when the tax was imposed.
We conclude, therefore, that the payment of a tax pursuant to NRS chapter 372A constitutes punishment, triggering the protections of the Double Jeopardy Clause.[3] The Kurth Ranch factors reveal that NRS chapter 372A is far-removed in crucial respects from a standard tax statute.
In contrast, the State asserts that the statute is remedial in nature. The State oifers absolutely no authority to explain why the statute is solely remedial, although it concludes that the legislative history supports this assertion. In fact, the sponsor of the bill giving rise to NRS chapter 372A introduced the legislation as *1228 serving two purposes: first, to “get the drug dealers where it really hurts — in the pocketbook,” and second, to provide “a whole new avenue of deterrents and punishment for drug dealers outside of the fines, sentences and courtroom procedures under current law.” Minutes of the Senate Taxation Committee, 64th Sess. 1-8, Exhibit C (March 12, 1987) (Senator John M. Vergiels, Introductory Remarks for Senate Bill 144) (emphasis added).
The State’s assertion runs directly afoul of the teachings of Halper, which concluded that recourse to statutory language, structure, and intent “is not well suited to the context of ‘humane interests’ safeguarded by the Double Jeopardy Clause’s proscription of multiple punishments.”[4] Halper, 490 U.S. at 447; accord Kurth Ranch,......U.S. at......, 114 S. Ct. at 1945 (summarizing Halper as deciding that the legislature’s description of a statute as civil does not foreclose the possibility that it has a punitive character).
Our conclusion does not render NRS chapter 372A unconstitutional on its face. Whether a tax imposed under the statute is unconstitutional in and of itself potentially presents issues under the Excessive Fines Clause, the Cruel and Unusual Punishment Clause, or the Due Process Clause.[5] See Kurth Ranch, ......U.S. at......, 114 S. Ct. at 1958-59 (Scalia, J., dissenting); Austin, 509 U.S. at 609-10, 113 S. Ct. at 2805 (applying Excessive Fines Clause analysis to forfeiture statute). Our conclusion simply requires taxes assessed under the statute to be considered punishment for double jeopardy purposes. As both Kurth Ranch and Halper instruct, a civil penalty may be levied in full, even if it does constitute punishment, as long as the debtor is not subject to further prosecution for the same olfense. Kurth Ranch,......U.S. at......, 114 S. Ct. at 1945; Halper, 490 U.S. at 450-51. Further *1229 more, the State can avoid the double jeopardy issue by enhancing fines imposed in the same proceeding in which the State seeks criminal sanctions. These fines present no double jeopardy issue and are rendered in a proceeding that affords the defendant the benefit of greater due process protections and a higher burden of proof.
We feel some apprehension in applying our conclusion in this case, however, because the State imposed civil sanctions upon Desimone before obtaining a criminal conviction. Thus, application of double jeopardy analysis would render the criminal conviction invalid, rather than merely the civil fine.[6] In an effort to avoid this consequence, the State argues that Desimone’s criminal conviction need not be overturned because Desimone has not actually paid any of the fine assessed against him. Absent actual payment, the State contends that Desimone has essentially not been punished. The State relies solely upon United States v. Sanchez-Escareno, 950 F.2d 193 (5th Cir. 1991), cert. denied, 506 U.S. 841, 113 S. Ct. 123 (1992), to support this contention. There, the Fifth Circuit reversed the district court’s dismissal on double jeopardy grounds of criminal charges involving drug importation. Id. at 195. The district court believed that the civil fines assessed before criminal charges were imposed constituted punishment sufficient to trigger application of the Double Jeopardy Clause. Id. at 194-95. On appeal, the court noted that if paid, the civil fines would constitute punishment because they were punitive in character. Id. at 195. Rather than affirming dismissal of criminal charges, however, the court concluded that no punishment had occurred, in the absence of a judgment or actual payment of the fines.[7] Id. at 201.
In Ward v. State, 870 S.W.2d 659 (Tex. Ct. App. 1994), a Texas court of appeals came to a similar conclusion on facts resembling those in Desimone’s case. However, because “[t]he State ha[d] not sought a judgment . . . and there [] [was] no *1230 adjudication by a court,” the tax was not punishment. Id. at 662. Because the State’s pursuit of a court sanctioned finding of guilt is clear evidence of the State’s intent to punish, a judgment is essential to the jeopardy analysis.[8]
Desimone argues, however, that civil penalties levied against him have already been reduced to judgment, rendering Sanchez-Escareno inapplicable. He emphasizes the following language of Sanchez-Escareno:
We find that appellees’ execution of promissory notes, in the absence of a judgment or payment by appellees, does not constitute “punishment” under the Double Jeopardy Clause, neither in the ordinary nomenclature associated with the word, nor pursuant to an analysis of various cases which have addressed the multiple punishment issue.
Sanchez-Escareno, 950 F.2d at 201 (emphasis added).
Desimone’s argument is persuasive. In both Ward and Sanchez-Escareno, penalties had merely been assessed, rather than reduced to judgment. Sanchez-Escareno, 950 F.2d at 195; Ward, 870 S.W.2d at 660. In fact, both Sanchez-Escareno and Ward suggest that the Double Jeopardy Clause would prevent a criminal conviction following a civil penalty reduced to judgment. Indeed, it is the purposes actually served by the State’s enforcement of a tax statute that trigger double jeopardy protection. These purposes, including the use of a judgment to deter future crime, are served through a judgment alone.
We must conclude, therefore, that double jeopardy analysis is triggered whether or not the civil penalties precede criminal prosecution.[9]

*1231
Whether this matter must be remanded for further findings

Relying on Halper, both Desimone and the State indicate that this court may remand the case to determine whether the civil fines assessed against Desimone constitute punishment. As Halper makes clear, the Double Jeopardy Clause is implicated by any civil penalty “to the extent” that it exceeds a rough accounting of the costs incurred by the government. Halper, 490 U.S. at 449. It follows that whatever does not exceed this rough approximation is not prohibited. Accordingly, the Court in Halper remanded the case, giving the “trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.” Id. at 450.
Halper, however, .involved civil penalties exclusively, not a tax. Kurth Ranch notes that Halper did not decide whether a tax could be characterized as punishment. Kurth Ranch, ......U.S. at ......, 114 S. Ct. at 1944-45. The Court reasoned that “fines, penalties, and forfeitures are readily characterized as sanctions, [but] taxes are typically different because they are usually motivated by revenue-raising rather than punitive purposes.” Id. at ......, 114 S. Ct. at 1946. For this reason, Halper"s method of determining whether a government penalty was remedial or punitive “ ‘simply does not work in the case of a tax statute.’ ” Kurth Ranch,......U.S. at......, 114 S. Ct. at 1948 (quoting Chief Justice Rehnquist’s dissent). The Court in Kurth Ranch therefore concluded that remand was inappropriate, because “the formula by which Montana computed the tax assessment would have been the same regardless of the amount of the State’s damages and, indeed, regardless of whether it suffered any harm at all.” Id.
Neither the State nor Desimone had the benefit of the analysis in Kurth Ranch, which was decided long after briefs in this case were filed. We conclude that further findings of fact in Desimone’s case are not needed, based on Kurth Ranch. NRS chapter 372A is not designed to reimburse the government, so a determination of the expenses incurred by the government is unnecessary. Similar to the tax analyzed in Kurth Ranch, the tax assessed under NRS chapter 372A would be the same regardless of the expenses incurred by the government.

CONCLUSION

We hold that a tax under NRS chapter 372A constitutes punishment under the Double Jeopardy Clause. If this tax is reduced to *1232 judgment or paid before criminal sanctions are imposed for the same offense, then the State is barred from pursuing criminal sanctions. Similarly, if the State first imposes criminal sanctions, the State is barred from then imposing a tax under NRS chapter 372A. No question of fact involving this holding exists to justify a remand. For these reasons, we reverse Desimone’s criminal conviction.
Springer, Shearing and Rose, JJ., concur.

The meaning of “life or limb” reflects an incorporation of broad common law protections. “Although the constitutional language, ‘jeopardy of life or limb,’ suggests proceedings in which only the most serious penalties can be imposed, the Clause has long been construed to mean something far broader than its literal language.” Breed v. Jones, 421 U.S. 519, 529 (1975). In Ex parte Lange, 85 U.S. (18 Wall.) 163 (1874), for instance, the Court noted that double jeopardy protections for both civil and criminal offenses had long found expression in the common law. Lange, 85 U.S. at 168. “In civil cases the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause.” Id. The Court concluded that it was unnecessary “to insist that other cases besides those involving life or limb are positively covered by the language of this amendment.” Id. at 170 (emphasis in original).

We note some confusion with respect to the “multiple punishments” component of the Double Jeopardy Clause. Justice Scalia, who once believed that a multiple-punishment component of the Double Jeopardy Clause *1225 existed, see United States v. Dixon, 509 U.S. 688, 696-97, 113 S. Ct. 2849, 2856 (1993), abandoned his position in Dep’t of Revenue of Montana v. Kurth Ranch,........U.S.......,........, 114 S. Ct. 1937, 1955 (1994), concluding in dissent that “‘[t]o be put in jeopardy’ does not remotely mean ‘to be punished,’ so by its terms this provision [the Double Jeopardy Clause] prohibits, not multiple punishments, but only multiple prosecutions.” Joined by Justice Thomas, Scalia distinguished Lange, stating that the opinion “went out of its way not to rely exclusively on the Double Jeopardy Clause, in order to avoid deciding whether it applied to prosecutions not literally involving ‘life or limb.’ ” Kurth Ranch,........U.S. at......, 114 S. Ct. at 1956. Driving Scalia’s change of heart is an apparent conviction that application of double jeopardy analysis to civil proceedings authorized by the legislature, a phenomenon Scalia claimed arose out of Halper, would lead to intolerable results. Id. at......, 114 S. Ct. at 1958-59. He concluded that it was “time to put the Halper genie back in the bottle.” Id. at......, 114 S. Ct. at 1959. Scalia distinguished subsequent cases purporting to follow Lange with respect to the multiple punishments doctrine by noting that “the repetition of a dictum does not turn it into a holding.” Id. at......, 114 S. Ct. at 1956. We admit to having similar concerns about the multiple punishments component of the Double Jeopardy Clause. And while we agree that repetition of dicta does not necessarily give rise to a holding, we are constrained to conclude the same of dissenting opinions.

The dissent claims that the “purposes actually served” by the State’s judgment against Desimone were negligible. Apparently, the dissent measures whether the State’s purposes are actually served by an accounting of collections on judgments. As stated above, the State had many other intentions and purposes that were actually served when it proceeded against Desimone under NRS 372A.

While the dissent recognizes no difference between the labels attached to a statute during legislative debate and the label of “judgment” attached after a judicial proceeding, the difference is clearly apparent. The “judgment” label applies a stigma directly upon an individual member of our citizenry. The Double Jeopardy Clause was drafted specifically to scrutinize the application of this label, not the labels coined through legislative debate.

The mere fact that jeopardy is found to attach to a civil penalty does not automatically make that penalty void as a violation of the Due Process Clause. The United States Supreme Court has repeatedly indicated that the unlawfulness of an activity does not prevent its taxation. Marchetti, 390 U.S. at 44. In this case, Desimone presented no evidence or argument that his due process rights were violated by the tax statute. Our review of the record reveals no such violation. In fact, Desimone was notified of the determination of his liability under the tax statute but failed to pursue any remedies. Accordingly, we presume the judgment was valid.

This result, according to the dissent, would create a windfall for the defendant. If bare enforcement of constitutional guarantees creates a windfall for our state’s citizenry, then we shall all benefit.

In Sanchez-Escareno, the defendants had signed promissory notes as obligations to pay civil penalties. The Court distinguished between promissory notes and judgments by stating that the former did not involve subjecting the defendant to trial. Id. at 202. Further, by stating that the lack of a judgment prevented jeopardy from attaching to the execution of promissory notes alone, the Court clearly distinguished between judgments and promissory notes. The Court’s reasoning can be explained by the stigma that is hung upon a defendant by judgment, not a promissory note. It is this stigma that is ignored by the dissent, but recognized by the Double Jeopardy Clause.

The dissent characterizes Ward as a case supporting the concept that payment is necessary for jeopardy to attach to a tax statute fine. First of all, the Ward court found that jeopardy did not attach even though the defendant did make a partial payment of the fine. Id. at 662. Second, the dissent’s insistence on payment for a finding of punishment is misplaced. The essential tenet of the Double Jeopardy Clause is to protect our citizenry from being subject to multiple punishments, not being actually punished. See Kurth Ranch, supra at 1955 (Scalia, J., dissenting).

The implications of this inevitable conclusion concerned Justice Scalia in his Kurth Ranch dissent, who noted that disallowing a civil sanction because punishment has already been imposed was a “relatively easy task,” while disallowing criminal punishment because a civil sanction has already been imposed would be much more demanding. Kurth Ranch, ........U.S. at......, 114 S. Ct. at 1958 (Thomas, J., joining in dissent). The majority of courts that have analyzed this more demanding situation properly reasoned that the sequence of punishment is irrelevant. See, e.g., Sanchez-Escareno, 950 F.2d at 200 (noting that “the order of proceedings matters not to the analysis”).