## THE STATE OF NEVADA, Appellant, v. DANIEL LOMAS, Respondent.

No. 28387

April 2, 1998                                      955 P.2d 678

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Appellant.

*Martin H. Wiener,* Reno, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

On January 21, 1995, Daniel Lomas was involved in a two-vehicle collision at the intersection of North McCarran Boulevard and Seventh Street in Reno. The driver of the other car was injured in the accident. Shortly after the accident, police officers apprehended Lomas and administered a test to determine his blood alcohol content. Three blood draws revealed blood alcohol levels of .211, .201, and .188. The state charged Lomas with four felony counts: driving under the influence of alcohol; driving while having 0.10 percent or more by weight of alcohol in the blood; having a blood alcohol content of 0.10 percent by weight of alcohol in the blood within two hours of driving; and leaving the scene of an accident involving personal injury.

In February 1995, the Department of Motor Vehicles and Public Safety ("DMV") notified Lomas that, due to the results of the evidentiary chemical test showing that Lomas had been driving with a blood alcohol content of 0.10 percent or more, his driver's license would be revoked for ninety days. *See* NRS 484.385.

In July 1995, Lomas signed a waiver of his right to a preliminary examination in the criminal case. The waiver contained a plea agreement whereby Lomas agreed to plead guilty to the charge of driving under the influence in exchange for: (1) leave to file a motion to dismiss the charge of driving under the influence on double jeopardy grounds, and (2) the prosecution's promise to drop all other charges. One month later, Lomas appeared in district court and entered a plea of not guilty.[1] Trial was set for November 1995.

---

[1] It appears that Lomas entered a plea of not guilty so that he could pursue his motion to dismiss as permitted by the plea agreement.

Prior to trial, Lomas filed a motion to dismiss his case on the ground that, because he had already been punished by having his driver's license revoked, a criminal conviction would violate federal and state constitutional prohibitions against double jeopardy. The state opposed the motion. In January 1995, the district court dismissed the case, finding that double jeopardy barred the criminal prosecution because the DMV had previously revoked Lomas' driver's license.

The state timely appealed from the district court's order of dismissal. We conclude that, under the United States Supreme Court's recent decision in Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488 (1997), the district court clearly erred by dismissing the charges against Lomas. Therefore, we reverse the district court's order.

## DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This protection applies to the states through the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 794 (1969), and has been incorporated into the Nevada Constitution. *See* Nev. Const. art. 1, § 8, cl. 1.

The Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

The prohibition against multiple punishments prevents the government from "punishing twice, or *attempting a second time to punish criminally,* for the same offense." Witte v. United States, 515 U.S. 389, 396 (1995) (quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938) (emphasis in *Witte*)). It has long been recognized, however, that the clause "does not prohibit the imposition of any additional sanction that could, " 'in common parlance,' " be described as punishment." *See Hudson,* 522 U.S. at 98-99, 118 S. Ct. at 493 (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943) and quoting Moore v. Illinois, 14 How. 13, 19 (1852)). Rather, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* at 99, 118 S. Ct. at 493.

In its recent *Hudson* decision, the Supreme Court in large part disavowed the double jeopardy analysis announced in United States v. Halper, 490 U.S. 435 (1989). The district court in the

instant case applied the *Halper* analysis in resolving Lomas' double jeopardy claim. Under the analysis defined in *Hudson*, the district court's order dismissing the criminal charges against Lomas on double jeopardy grounds must be reversed.[2]

Based on a previously established rule exemplified in United States v. Ward, 448 U.S. 242, 248-49 (1980), *Hudson* articulates a two-part test for determining whether a particular punishment is criminal or civil. First, "[a] court must . . . ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Hudson,* 522 U.S. at 99, 118 S. Ct. at 493 (quoting *Ward,* 448 U.S. at 248). Second, even in those cases where the legislature indicates an intention to establish a civil penalty, a court should inquire further whether the statutory scheme is so punitive either in purpose or effect, "as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* at 99, 118 S. Ct. at 493 (quoting Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956)).

In making this latter determination, the *Hudson* Court looked to seven factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), as "useful guideposts." *Hudson,* 522 U.S. at 99, 118 S. Ct. at 493. These factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* at 99-100, 118 S. Ct. at 493. *Hudson*

---

[2]Although *Hudson* renders it unnecessary to decide the issue, we have serious doubts about whether the district court correctly analyzed the facts of this case pursuant to *Halper.* In particular, we note that *Halper* announced a rule "for the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Halper,* 490 U.S. at 449. The driver's license revocation at issue here does not constitute an "overwhelmingly disproportionate" sanction. The district court's misapprehension of *Halper* is quite understandable given our decision in Desimone v. State, 111 Nev. 1221, 904 P.2d 1 (1995). *Desimone,* along with many other appellate and trial court decisions nationwide, interpreted "dictum" in *Halper* as mandating double jeopardy analysis whenever a civil penalty does not "*solely*" serve a remedial purpose. United States v. Ursery, 518 U.S. 267 (1996) and *Hudson* clear up the confusion created by *Halper.*

emphasizes that these factors must be considered "in relation to the statute on its face," and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100, 118 S. Ct. at 493 (internal quotation marks and citations omitted).

Turning then to the first step of the *Hudson* analysis, our prior holdings make it clear that the Nevada legislature intended driver's license revocation proceedings to be civil rather than criminal. We have previously concluded, for example, that an administrative driver's license revocation proceeding is "civil in nature, not criminal." State, Dep't of Mtr. Vehicles v. Frangul, 110 Nev. 46, 50, 867 P.2d 397, 399 (1994); *see also* State, Dep't of Mtr. Vehicles v. Binder, 109 Nev. 945, 949, 860 P.2d 163, 166 (1993); Beavers v. State, Dep't of Mtr. Vehicles, 109 Nev. 435, 438, 851 P.2d 432, 434 (1993); State, Dep't of Mtr. Vehicles v. McLeod, 106 Nev. 852, 854, 801 P.2d 1390, 1392 (1990); Yohey v. State, Dep't Motor Vehicles, 103 Nev. 584, 587-88, 747 P.2d 238, 240 (1987). Moreover, as the Court noted in *Hudson,* the legislature's decision to confer authority to impose a civil sanction on an administrative agency is prima facie evidence that the legislature intended to provide for a civil sanction. *Hudson,* 522 U.S. at 103, 118 S. Ct. at 495. Therefore, it is clear that the Nevada legislature intended administrative proceedings relating to revocation of a driver's license to be civil, not criminal.

With respect to the second part of the *Hudson* test, we conclude that there is little evidence, much less the "clearest proof," that driver's license revocation is so punitive in form and effect as to render it criminal despite the legislature's contrary intent. We note, for example, that the "revocation of a privilege voluntarily granted," such as the privilege to drive, is a sanction "characteristically free of the punitive criminal element."[3] *Hudson,* 522

---

[3]The vast majority of appellate courts that have addressed the issue have concluded that revocation of a driver's license serves the remedial purpose of safeguarding the public and reducing traffic fatalities and does not constitute punishment for double jeopardy purposes. *See, e.g.,* State v. Zerkel, 900 P.2d 744 (Alaska Ct. App. 1995); Snow v. Superior Court, 903 P.2d 628 (Ariz. Ct. App. 1995); State v. Nichols, 819 P.2d 995 (Ariz. Ct. App. 1991); Baldwin v. Dept. of Motor Vehicles, 42 Cal. Rptr. 2d 422 (Ct. App. 1995); Ellis v. Pierce, 282 Cal. Rptr. 93 (Ct. App. 1991); State v. Hickam, 668 A.2d 1321 (Conn. 1995); Freeman v. State, 611 So. 2d 1260 (Fla. Dist. Ct. App. 1992); Kirkpatrick v. State, 464 S.E.2d 882 (Ga. Ct. App. 1995); State v. Higa, 897 P.2d 928 (Haw. 1995); State v. Talavera, 905 P.2d 633 (Idaho 1995); State v. Mertz, 907 P.2d 847 (Kan. 1995); Butler v. Dept. of Public Safety & Corr., 609 So. 2d 790 (La. 1992); State v. Savard, 659 A.2d 1265 (Me. 1995); State v. Jones, 666 A.2d 128 (Md. 1995); Johnson v. State, 622 A.2d 199 (Md. Ct. Spec. App. 1993); Luk v. Commonwealth, 658 N.E.2d 664 (Mass. 1995); State v. Hanson, 532 N.W.2d 598 (Minn. Ct. App. 1995), *aff'd,* 543 N.W.2d 84 (Minn. 1996); State v. Young, 530 N.W.2d 269 (Neb.

U.S. at 104, 118 S. Ct. at 496 (internal quotation marks and citation omitted). The revocation also does not involve an "affirmative disability or restraint," as that term was evidently understood in *Hudson*. *Hudson* observed, for example, that the civil sanction at issue in that case, imposition of a fine and the loss of the privilege to participate in the banking industry, was " 'certainly nothing approaching the "infamous punishment" of imprisonment.' " *Hudson,* 522 U.S. at 104, 118 S. Ct. at 496 (quoting Flemming v. Nestor, 363 U.S. 603, 617 (1960)). If occupational debarment from the banking industry cannot be considered an affirmative disability or restraint, then quite obviously the temporary suspension of respondent's driving privilege also cannot be so considered.

With respect to the remaining guideposts listed in *Hudson,* we note that an administrative driver's license revocation does not require a finding of scienter. Revocation can be imposed without inquiry into the violator's state of mind. Further, although the conduct for which the revocation is imposed can also be criminal, this fact is insufficient to render the sanction criminally punitive in the double jeopardy context. *Id.* at 105, 118 S. Ct. at 496 (citing United States v. Ursery, 518 U.S. 267 (1996); United States v. Dixon, 509 U.S. 688 (1993)).

Next, we conclude that driver's license revocation is rationally connected to a purpose other than criminal punishment. Specifically, revocation furthers the government's goal of maintaining safety on public roads. Moreover, a minimum ninety-day suspension is not excessive in relation to that goal.[4] The state's interest in removing drunk drivers from the roads is "of such a nature and importance to society in general that the inconvenience occasioned by the temporary suspension of driving privileges pales by comparison." City of Columbus v. Adams, 461 N.E.2d 887, 890 (Ohio 1984), *overruled on other grounds by* State v. Williams, 667 N.E.2d 932 (Ohio 1996); *see also Jones,* 666 A.2d at 141.

Finally, the revocation statutes may deter drivers who entertain the idea of driving while intoxicated and may also discourage drivers whose licenses have been revoked from engaging in

Ct. App. 1995), *aff'd,* 544 N.W.2d 808 (Neb. 1996); State v. Cassady, 662 A.2d 955 (N.H. 1995); State ex. rel. Schwartz v. Kennedy, 904 P.2d 1044 (N.M. 1995); State v. Zimmerman, 539 N.W.2d 49 (N.D. 1995); State v. Phillips, 909 P.2d 882 (Or. Ct. App. 1996); State v. Arbon, 909 P.2d 1270 (Utah Ct. App. 1996); State v. Strong, 605 A.2d 510 (Vt. 1992); Tench v. Commonwealth, 462 S.E.2d 922 (Va. Ct. App. 1995).

[4]Although Lomas was only subject to a ninety-day suspension, we also conclude that the five-year maximum suspension authorized pursuant to NRS 483.460(4)(b) is not excessive in relation to the government's remedial goal.

similar misconduct in the future. Although deterrence is a traditional goal of criminal punishment, the mere presence of a deterrent purpose is insufficient to render a sanction criminal for purposes of the Double Jeopardy Clause because deterrence also may serve civil goals. *Hudson,* 522 U.S. at 105, 118 S. Ct. at 496.

The license revocation statutes at issue do not appear on their face to be punitive rather than remedial. On the contrary, by suspending the licenses of drivers who pose a danger to their own safety and to that of others, the statutes reveal a rational remedial, or civil deterrent purpose, rather than a retributive or criminal purpose.

## CONCLUSION

Today, we adopt the double jeopardy analysis articulated in *Hudson.* To whatever extent that *Hudson* may effect a change in existing law, we conclude that the change is applicable to the instant appeal. *See* Griffith v. Kentucky, 479 U.S. 314 (1987); Franklin v. State, 98 Nev. 266, 269, 646 P.2d 543, 544 (1982). Under *Hudson,* we conclude that the district court erred by dismissing the case against Lomas on double jeopardy grounds. We therefore reverse the order of the district court granting Lomas' motion to dismiss and remand this matter for further proceedings on all charges.