**Timothy GONZALES, Petitioner,**

v.

**David McKUNE, Warden, Lansing Correctional Facility,**

**and**

**Carla Stovall, Kansas Attorney General, Respondents.**

**No. 97–3168–DES.**

United States District Court, D. Kansas.

Nov. 30, 1999.

Timothy Gonzales, Lansing, KS, pro se.

David J. Gottlieb, Jean K. Gilles Phillips, University of Kansas, School of Law, Lawrence, KS, for Timothy Gonzales, petitioner.

Jared S. Maag, Office of Attorney General, Topeka, KS, for David McKune and Attorney General of Kansas, respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner challenges the legality of his conviction of attempted rape and felony murder. The petitioner alleges he received ineffective assistance of council and the prosecutor failed to disclose exculpatory evidence. Both parties have submitted briefs on these issues and the court is ready to rule.

## I. BACKGROUND

Timothy Gonzales was charged with attempted rape and felony murder. He was found guilty by a jury of both charges and sentenced to ten to forty years on the aggravated battery charge and life on the felony murder charge. The trial judge ordered the two sentences to run consecutively.

On August 17, 1986, the body of the victim was found in a cornfield called Cowgill 18 south of Garden City, Kansas. The victim was stabbed numerous times and her throat was cut. The only clothes left on the body were a blood-stained, white oxford shirt and bra which had been cut open. The victim's upper body was covered in blood. Her blood-soaked jeans, underwear and hat were found nearby. There were three pools of blood found near Cowgill road. Investigator Vivian VanVleet described drag marks where the body had been drug between the pools of blood, and finger marks where the victim tried to grab dirt. At the third pool of blood, the ground was soft, and VanVleet could see body imprints which looked as if the victim's legs were spread and someone knelt between them.

The victim was last seen alive at the Finney County fair. Doug Robinson, who had been dating the victim, testified that she was at his house until 11 p.m. on the night of August 16, 1986. She told him she would be going to the fair. Adam Flores testified that he had known the petitioner for seven years, and vaguely knew the victim from school. Flores was walking to the fair when Gonzales stopped and offered him a ride. Although he declined the ride because he was almost to the fair, Flores saw Gonzales drive his car into the parking lot. Once inside the fair, the two men walked around together, saw a concert, and "checked out" women. Flores testified that Gonzales pointed out the victim to him, and said "he was going to try to get it." Gonzales called out to the victim, and the three walked around together. When they reached the parking lot, Gonzales and the victim stopped and talked. Flores could not hear the conversation, and decided to walk home because "Three's a crowd." Flores testified that he left Gonzales and the victim in the parking lot as the fair was ending, shortly before midnight. Flores also testified that Gonzales owned a brown lock-blade knife which he saw in Gonzales's car a couple weeks before the murder. Flores said Gonzales was wearing the same knife at the fair in a pouch attached to his belt.

Gonzales did not testify at trial. In a statement given to the police, Gonzales admitted going to the fair, but claimed he walked and did not drive his car. Gonzales was purchasing a 1972 Mercury Montego from his brother-in-law, Ernest Campos. Campos testified that Gonzales had possession of the car on August 16, 1986, and was using Campos' license. Flores testified Gonzales drove the Mercury to the fair. Frank Romero, who was dating Gonzales's sister, testified that when he dropped the sister off at Gonzales' home at 9 p.m. on August 16, 1986, the Mercury was not there.

At 12:24 a.m. on August 17, 1986, Officer Abundio Munoz was investigating a bonfire in the area near where the victim's body was found. The officer testified he saw a vehicle coming south on Cowgill road and waited for it because it was unusual to see traffic at that time of night. The car was a green, 1970s vintage Mercury or Ford. He called in the registration and was told the car belonged to Ernest Campos. The officer personally knew Campos, and knew

Campos was not the driver. Munoz described the driver as a Hispanic male, wearing no shirt, who looked wet or sweaty. Munoz followed the car for ten minutes before he received another call and abandoned his plan. Both Munoz's activity log and the dispatcher's records confirm his testimony.

Dr. David DeJong, who performed the autopsy, testified that the time of death was approximately midnight. He also testified that the wounds were made by a single-sided blade at least two inches long. The stab wounds on the victim's hands were consistent with someone trying to fight off an attack. Semen was found on the victim's inner left thigh. Forensic serologist testified that Gonzales could be the donor of the semen and the fingernail scrapings taken from the body of the victim. Fibers from the victim's jeans matched fibers from the seat of Gonzales's car. In addition, an expert testified that the Gonzales's tire tread matched the tire tracks from the scene of the crime.

In November 1986, the police got a search warrant to search Gonzales's home. Under his bed the officers found a box containing sex magazines and a newspaper dated August 18, 1986, which contained a front page article about the murder. Gonzales claimed his sister used newspaper to wrap her babies diapers, but there were no baby products found in the room.

At trial, the prosecution introduced into evidence a letter written by Jack Spears, who was in jail while petitioner was there. The letter indicated that Gonzales confessed to the murder, described why he murdered the victim, and discussed past rapes. The State called Spears to testify, but he refused to answer any questions.

The defense presented the testimony of Donna Rupp, who lived on Cowgill Road. She testified that on the night of the murder, she stayed up to wait for her teenage daughter to get home. She saw every vehicle that traveled on the road that night from 10:30 p.m. to 3:00 a.m. She testified that she recognized all the cars except one, which was black and had fins. The car she

saw did not match the picture of Gonzales's car. Jessie Dyke testified that he saw the taillights of a car traveling on Cowgill Road from 12:00 to 12:30 a.m. Dyke testified that the taillights were similar to a picture of the taillights on Gonzales's car.

Based on the above evidence, the jury found petitioner guilty of attempted rape and felony murder.

## II. STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceeding unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d). This standard has been further explained by the Tenth Circuit Court of Appeals as follows:

A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact; or (2) if no such controlling decision exists, the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In short, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant

precedent in a manner that reasonable jurists would all agree is unreasonable. *Roberts v. Ward,* 176 F.3d 489, No. 98–6066, 1999 WL 162751, at *3 (10th Cir. March 25, 1999) (unpublished opinion) (citing *Sexton v. French,* 163 F.3d 874, 880 (4th Cir.1998); *Jones v. Jones,* 163 F.3d 285, 299 (5th Cir.1998)).

## III. ANALYSIS

### A. Failure to Disclose Exculpatory Evidence

■■■ The petitioner claims the prosecution failed to produce exculpatory evidence prior to the trial. To establish a Brady violation, the petitioner must "prove that [1] the prosecution suppressed the evidence, [2] the evidence would have been favorable to the accused, and [3] the suppressed evidence was material." *Moore v. Reynolds,* 153 F.3d 1086, 1112 (10th Cir. 1998). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to "undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The court must determine materiality on the basis of the entire record, considering all of the undisclosed evidence collectively. *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

■■ First, the State failed to disclose that the semen stain found on the victim contained no sperm. The lab technician did not include this fact in her report because sperm is not needed to determine genetic markers or blood type. She did suggest that the agents look for a suspect who had a vasectomy. Gonzales argues the lack of sperm is exculpatory because he has a normal sperm count.

At the evidentiary hearing, a forensic expert testified that he would expect to find sperm in the semen sample given the circumstances surrounding this case. However, the expert further testified that the absence of sperm was a neutral factor neither tending to prove or disprove that the donor could not produce sperm. The expert pointed to factors such as collection methods and environmental conditions that could affect the presence of sperm in a semen sample. Considering the expert's testimony in its entirety, the evidence of lack of sperm in the semen sample is not clearly exculpatory. The court can not say that a reasonable jury would agree that the state court's decision was unreasonable.

■■ Second, the petitioner alleges that the State failed to disclose two previous lab tests which failed to reveal fibers that connected petitioner to the crime. Gonzales argues that this evidence is exculpatory because it casts doubt on the third test performed by Phillip Aviles linking him to the crime. Contrary to petitioner's position, the record shows that trial counsel, Dennis Bahr, knew about the two lab tests. In his evidentiary trial brief, Gonzales admits, "Dennis Bahr knew that another examiner, Larry Morris, had done fiber comparisons and had not found any matches, but he deliberately withheld this information from the jury."[1] The state court never addressed whether the State failed to disclose the two lab tests conducted by Larry Morris because that issue was not supported by the evidence nor presented by petitioner in his argument. At the state court level, the petitioner's argument was cast only in terms of ineffective assistance of counsel, and appropriately so. The court finds that trial counsel knew that Morris conducted lab tests which failed to find matching fibers. Therefore, the failure to disclose such information did not affect the outcome of the case.

### B. Ineffective Assistance of Council

The Sixth Amendment guarantees criminal defendants the right of effective assistance of counsel. To establish an ineffective assistance of counsel claim, the petitioner must show (1) "that coun-

1. *See* Bahr Dep. at 31–35.

sel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show "that counsel's performance was deficient," the petitioner must show that his attorney's conduct fell outside the wide range of competence demanded of an attorney in a criminal case. *United States v. Carr*, 80 F.3d 413, 417 (10th Cir.1996). In order to show "that the deficient performance prejudiced his defense," the petitioner must show that there is a "reasonable probability that, but for the alleged errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ In addition to creating the two-prong test in *Strickland*, the Court also established general guidelines for evaluating ineffective assistance of counsel claims. Judicial scrutiny of counsel's performance should be done in a "highly deferential" manner that "eliminate[s] the distorting effects of hindsight," and starts with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689–90, 104 S.Ct. 2052. Petitioner presents a list of alleged errors made by defense counsel, Dennis Bahr. The court addresses each error individually, and their cumulative effect.

■ First, Bahr failed to object to the admission of a letter written by Jack Spears describing a confession by Gonzales. The letter states,

they moved the wetback tim gonzolas last week because I was going to kick his ass, he told me he killed that Girl just because he tryed to fuck her in the ass and she wouldn't let him so he tryed to hold her down so she grab his balls and started to squess and yank the fuck right out of them so he went a grab a knife and stab + slice her throat. That mother fucker ought to get the same treatment, he has a prior record of rapes in texas and one hear. Im think-

ing about testafing against him in court, now don't get me wrong Kevin Im no nark, its just that allot of people think that I did it and I imagine thats why my bond is so fuckin high and another reason is I hate him and would really like to give him a taste of his own medicine.

Bahr says he did not object because he planned on cross-examining Spears. However, when Spears took the stand, he refused to testify claiming Fifth Amendment privilege against self-incrimination. Spears later admitted that Gonzales never confessed to the rape or murder. Petitioner claims that had counsel properly objected to the letter as hearsay or taken remedial measures, the outcome of the case would have been different. The State agrees that it was error not to object. However, the State argues that the outcome would not have been different.

When determining whether an error prejudiced the defendant, the court must consider the totality of the evidence presented to the jury. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. If the evidence is overwhelming, the error is less likely to prejudice the defendant. The Kansas Court of Appeals found that the circumstantial and forensic evidence presented against Gonzales was overwhelming. The court also pointed out that the letter did not go completely unchallenged. In Bahr's closing argument, he addressed Spear's bias against Hispanics, Spear's own criminal behavior, and his refusal to testify. The jurors told Bahr they had not considered the letter in arriving at their verdict. In light of all the evidence, the outcome of the trial would not have been different had the letter not been admitted. The court can not say that reasonable jurists would agree that the state court's decision was unreasonable.

■ Second, Bahr failed to interview Larry Morris, who conducted the first two fiber tests. Morris performed two tests in an attempt to find matching fibers which would link the victim's jeans to the Gonzales car. His supervisor, Eileen Berneau,

was not satisfied with his collection methods. She performed her own collection of the evidence and had Phillip Aviles conduct a third test in which matching fibers were found. Morris was fired, in part, for his failure to properly collect evidence in the *Gonzales* case. Gonzales argues that Bahr should have examined Morris about the two tests and used this information to impeach Aviles.

The state court found that Morris would have been subject to severe cross-examination and impeachment. Bahr feared cross-examination as to Morris's inability to find the fibers would affect Morris's credibility. Morris testified positively for the defense as to an unidentified hair found in the victim's neck. Bahr admitted he did not ask questions about Morris's fiber tests because, "I wanted him as a defense witness." Bahr Dep. at 35. The State agreed not to attack Morris's credibility if Bahr limited Morris's testimony to the hair. This is clearly a tactical and strategic decision. Such decisions are reserved for the attorney, and there is a strong presumption that such decisions are reasonable. The petitioner failed to—show that counsel's performance was deficient.

Third, Bahr failed to interview and subpoena witnesses who saw the victim with other men. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Bahr testified that he chose not to call these witnesses at trial because their testimony was inconsistent with their statements in the police report or inconsistent with other evidence in the record, such as when the victim was at the fair, what she was wearing, and which man she was with. He admitted to considering using such witnesses, but "we were never able to make anything out of it." Bahr Dep. at 23. Gonzales presents no evidence that further investigation would have assisted his defense other than to establish the victim was seen talking to other men. There is also no evidence that the wit-

nesses' testimony would contradict the damaging testimony of Adam Flores. Flores saw the victim in the parking lot with Gonzales as the fair was ending around midnight. "A defendant may not prevail on a claim of ineffective assistance based solely on conclusory allegations." *United States v. Nelson,* 984 F.Supp. 1368, 1372 (D.Kan.1997). Rather than conduct futile interviews, counsel chose to put his effort into more fruitful aspects of the defense. The state court found that Bahr's decision not to pursue these witnesses was reasonable. The petitioner failed to rebut the presumption that attorney acted reasonably.

Fourth, Bahr failed to introduce evidence that the victim's boyfriend's car was seen near the scene of the crime. Donna Rupp testified that she watched traffic on Cowgill road on the night of the murder from 10:30 p.m. to 3:00 a.m. She recognized all the cars that drove by on the night of the murder except one, and described the car to the jury. Rupp described the car as black with fins. This description matches the victim's boyfriend's car. Rupp testified that the unidentified car did not match Gonzales's car. Petitioner argues that Bahr should have asked Rupp to compare the unidentified car to the victim's boyfriend's car.

The state court found Bahr's decision not to further question Rupp about whether the unidentified car was tactical and strategic. At the evidentiary hearing, Bahr testified that he doubted Rupp's testimony. Gonzales admitted to having driven near Rupp's house the night of the murder. Rupp also did not see the cars of Munoz and Dike who were driving in the area. Bahr was concerned that if Rupp was questioned her story might change, or she might say something damaging and unexpected. The testimony Bahr elicited was helpful to his client, and Bahr chose not to put this helpful information in jeopardy. This again is the type of tactical decision that is properly left to the attorney. The court agrees with the state

court's decision that Bahr's conduct was objectively reasonable.

The court must finally consider whether the petitioner was denied effective assistance of counsel considering the totality of the alleged errors in petitioner's brief.[2] The petitioner claims that the cumulative effect of the attorney's errors is to "dramatically undermine confidence in the jury verdict." The court disagrees. The circumstantial and forensic evidence presented against the defendant is overwhelming. Even if every alleged error did not occur, the court believes the result would be the same. The defendant has not shown prejudice. Applying the standard of review for habeas cases, the court can not say that reasonable jurists would agree that the state court's decision was unreasonable.

## IV. CONCLUSION

The court finds that the petitioner is not entitled to habeas relief in this case. While trial counsel did commit error · in failing to object to the confession letter, the petitioner failed to show he was prejudiced by that error. In addition, the evidence. which the government failed to disclose was not exculpatory. The evidence presented against the petitioner is overwhelming. Considering all the alleged errors in their totality, the state court's decision that defendant was not prejudiced or denied a fair trial is reasonable.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) and Rule 22(b) of the Federal Rules of Appellate Procedure, no movant may appeal a district court's decision denying a 28 U.S.C. § 2254 motion without a certificate of appealability issued by a district judge or circuit judge. The certificate of appealability will be issued only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). For the reasons discussed above, the court finds that petitioner has not made "a substantial showing of the denial of a federal right." *Id.* A certificate of appealability will not be granted.

**IT IS THEREFORE BY THIS COURT ORDERED** that the petition for writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C § 2254 is denied. The court will not grant a certificate of appealability.

---

**2.** In his brief, Gonzales argues he was denied effective assistance of counsel because Bahr failed to question Deputy Munoz about the delay in filling out his report. In the report, Munoz describes seeing Gonzales on the night of the murder. Gonzales did not present this argument to the state court. However, the court did consider this argument in its finding that Gonzales was not denied effective assistance of counsel.