Roy L. JENSEN, Petitioner,

v.

Edward E. BOUKER, Judge, District Court of Ellis County,

and

Glenn Braun, County Attorney, Ellis County,

and

Carla Stovall, Kansas Attorney General, Respondents.

Nos. 97–3032–DES, 97–3033–DES.

United States District Court, D. Kansas.

March 13, 2000.

---

Michael S. Holland, Holland & Holland, Russell, KS, for Roy L Jensen, petitioner.

Jared S. Maag, Office of Attorney General, Topeka, KS, for Edward E Bouker, Glenn R Braun, Attorney Gen. of Kansas, respondents.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on review of Magistrate Judge Walter's Report and Recommendation (Doc. 13) on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner has filed objections to the Report and Rec-

ommendation, arguing that Magistrate Judge Walter incorrectly determined that the Kansas Drug Tax Act, Kan.Stat.Ann. § 79–5201, *et seq.*, did not violate the Double Jeopardy Clause of the Fifth Amendment. Petitioner also argues that he was denied his Fourth Amendment right to be free from unreasonable searches and seizures because the state court denied him an evidentiary hearing to determine whether the search warrant was premised upon perjured testimony. For the following reasons, the court accepts and adopts the findings and conclusions of the Report and Recommendation.

## I. BACKGROUND

The Report and Recommendation summarized the facts of this case as follows:

Petitioner Roy L. Jensen was charged on July 20, 1993, with one count of possession of marijuana with intent to sell within 1000 feet of school property and one count of possession of marijuana without paying a drug tax. On November 24, 1994, the Ellis County District Court dismissed the charge of possession with intent to sell on the grounds that the charge violated Jensen's Fifth Amendment rights. The drug tax count was not dismissed. On November 30, 1994, Jensen was found guilty by stipulated facts of the drug tax count. Jensen was sentenced on December 19, 1994, to probation for 24 months. The sentence was stayed pending appeal.

Jensen appealed his conviction to the Kansas Court of Appeals on the grounds the district court erred in not suppressing the evidence seized from his home. The state also appealed the double jeopardy ruling. The two cases were consolidated with another similar case. The Kansas Supreme Court held Jensen was not entitled to a hearing on the suppression of evidence and the prosecution of Jensen for both the drug possession count and the drug tax count was not precluded by the Fifth Amendment. *State v. Jensen*, 259 Kan. 781, 915 P.2d 109 (1996), *cert. denied*, 519 U.S. 948, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996).

On remand, Jensen was found guilty of possession of marijuana with intent to sell within 1000 feet of school property upon stipulated facts. Further proceedings were stayed until Jensen exhausted his federal habeas remedies.

Jensen presents this court with two grounds: 1) whether the Double Jeopardy Clause bars the criminal prosecution for possession of marijuana in light of the assessment of a drug tax and penalties for the marijuana possession and 2) whether petitioner was denied his constitutional right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment because the state court denied him an evidentiary hearing to determine whether the search warrant was premised upon perjured testimony.

After discussing the relevant case law and the arguments of the petitioner, Magistrate Judge Walter concluded that the Kansas court's interpretation and application of Supreme Court precedent as to both issues was not unreasonable. Therefore, Magistrate Judge Walter recommended that petitioner's habeas corpus petition be dismissed and relief denied.

## II. STANDARD OF REVIEW

The standard for district court review of a magistrate judge's report and recommendation is contained in 28 U.S.C. § 636(b)(1), which provides as follows:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). As stated in the Code, the district court must make a *de novo* determination regarding the portions

of the report and recommendation to which objections have been filed. *Id.*

Petitioner does not object to the federal habeas standard of review as stated in the magistrate judge's report and recommendation:

Jensen's petition for habeas relief was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (known as "AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA altered the language of the statute governing habeas petitioners, 28 U.S.C. § 2254, and now directs that claims which were specifically decided by the state court must be denied unless adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

28 U.S.C. § 2254(d). While the specific standard of review a habeas court must give to the state court's decision has yet to be conclusively determined, *see, O'Brien v. Dubois,* 145 F.3d 16 (1st Cir.1998) (discussing the various approaches), it is clear that "AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." *See, e.g., Houchin v. Zavaras,* 107 F.3d 1465, 1470 (10th Cir.1997).

This court will make a de novo review of the report and recommendation applying the above standard.

## III. DOUBLE JEOPARDY CLAUSE

### A. Relevant Facts

The Kansas Supreme Court found the following facts relevant to defendant's Double Jeopardy claim:

On June 23, 1993, pursuant to a search warrant issued out of [the Ellis County District] Court, officers of the Ellis County Drug Task Force searched defendant's home. A quantity of marijuana was found and seized, resulting in the present charges. (See Affidavit in Support of Search Warrant). On July 9, 1993, The Kansas Department of Revenue, Division of Alcoholic Beverage Control, Drug Tax Administration issued a Notice of Assessment of Tax Upon Marijuana and a Controlled Substance.

The Notice states that the KDR has levied a tax upon the marijuana seized of $9,975.00, based upon the statutory tax rate of $3.50 per gram or portion thereof. In addition, the Department assessed a 100% penalty. The total tax due as stated in the Notice is $19,950.00, and a tax warrant was issued for that amount. The tax warrant is also dated July 9, 1993. (See Defendant's Exhibits 1 & 2).

The parties have stipulated that a sum in excess of $18,000.00 has been seized by KDR from defendant's bank account under the tax warrant, in substantial satisfaction of the tax and penalty due.

*Jensen,* 915 P.2d at 113.

### B. Analysis

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Benton v. Maryland,* 395 U.S. 784, 793, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause protects the criminal defendant against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple criminal punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Petitioner argues that application of the Kansas Drug Tax Act places him in jeopardy twice for the same crime of possession of marijuana. Because the Kansas legislature has expressly labeled the drug tax as a civil

remedy, the court must determine whether the tax is "so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (internal citations omitted);[1] accord *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 785, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

In a five to four opinion, the United States Supreme Court held that Montana's drug tax violated the Double Jeopardy Clause's prohibition against successive punishments for the same offense because it was criminal rather than civil in nature. *Kurth Ranch*, 511 U.S. at 785, 114 S.Ct. 1937. Montana's drug tax was eight times the drug's market value, and it was clear that the Montana Legislature intended for the tax to deter people from using marijuana. *Id.* at 780, 114 S.Ct. 1937. Although the tax was "remarkably high" and the legislative purpose of deterrence unmistakable, the Court recognized that a tax is not punitive under the constitution merely because the tax rate is high and the tax is intended to have some deterrent effect. *Id.* at 781, 114 S.Ct. 1937.

The Supreme Court identified three distinguishing characteristics that set Montana's drug tax apart from most taxes. First, imposition of the tax was conditioned upon the commission of a crime. Only those individuals who were arrested for drug possession had to pay the tax. *Id.* Second, Montana accomplished no legitimate revenue-raising purpose that could not have been equally served with fines. The court found it significant that the tax was imposed by the same sovereign who criminalized the conduct. *Id.* at 782, 114 S.Ct. 1937. Finally, the tax was levied on goods that the taxpayer could never lawfully possess and that the taxpayer no longer owned or possessed when the tax was imposed. *Id.* at 783, 114 S.Ct. 1937. The Court found that, "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial aspects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at 783, 114 S.Ct. 1937 (emphasis added).

The Kansas Supreme Court held the Kansas Drug Tax Act was constitutional, distinguishing the Kansas drug tax from the Montana drug tax. *Jensen*, 915 P.2d at 116–20 (relying on the decision of *State v. Gulledge*, 257 Kan. 915, 896 P.2d 378 (1995)). The Kansas court rejected petitioner's argument that the rate of taxation in Kansas was more punitive than that in Montana. The initial tax rate is the same in Kansas as in Montana, eight times the value of the drugs. Unlike Montana, the Kansas tax is imposed every three months from the time of initial possession. "[T]he short life span of the tax stamps reflects the legislature's recognition of the rapid turnover rate of illicit drugs." *Gulledge*, 896 P.2d at 384. In addition to the high tax rate, Kansas has a 100 percent tax penalty for failure to affix the drug stamps.[2] Such a high tax penalty is consistent with other tax penalties found in Kansas law.[3] The *Jensen* court correctly

**1.** Magistrate Judge Walter cites *Hudson v. United States* which references seven factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), used to determine whether statutory remedies are civil or criminal. The court agrees with petitioner that *Hudson* does not change or modify the legal impact of *Kurth Ranch* when analyzing a drug tax.

**2.** Kan.Stat.Ann. § 79–5208 provides that "[a]ny dealer violating this act is subject to a penalty of 100 percent of the tax in addition to the tax imposed by Kan.Stat.Ann. § 79–5202.... In addition to the tax penalty imposed, a dealer distributing or possessing marijuana ... without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony." The 100 percent tax penalty was not addressed by the *Gulledge* court.

**3.** Several Kansas statutes provide for tax penalties greater than 100 percent. *See* Kan.Stat. Ann. §§ 40–246a(a), 40–246c (1997) (200 percent penalty for failure to pay insurance law tax); Kan.Stat.Ann. § 41–407(a)(1) (1997) (200 percent penalty for evading liquor tax); Kan.Stat.Ann. § 79–1434(b) (1997) (200 per-

determined that the 100 percent penalty was not punishment for possession, but punishment for failing to pay the drug tax, therefore, the double jeopardy clause was not implicated. *Jensen,* 915 P.2d at 120.

Although the Kansas tax imposed a high rate of taxation and had an obvious deterrent purpose, a high tax rate and deterrent purpose do not, by themselves, render a tax unconstitutional. *Gulledge,* 896 P.2d at 384 (quoting *Kurth Ranch,* 511 U.S. at 780, 114 S.Ct. 1937). The Kansas court determined that the Kansas tax lacked two of the unusual features of the Montana drug tax: (1) the tax was not assessed after the commission of a crime and (2) the tax was not levied on goods that are no longer in possession of the taxpayer. *Gulledge,* 896 P.2d at 384–88.

As to the first punitive feature, the Kansas court determined that the Kansas tax differed from the Montana tax because it only applies to those who possess drugs in large enough quantities to be considered "dealers" rather than to everyone who possess illegal drugs. *Id.* at 384–85; Kan. Stat.Ann. § 79–5201(c) (1997).[4] Thus, the state "allows an individual to possess, manufacture, purchase, produce, or transport drugs illegally without incurring tax liability or penalties, provided either the individual's activities involve less than the amount of drugs specified in the drug stamp tax statute or the individual pays the mandated tax." *Padavich v. Thalacker,* 162 F.3d 521 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2374, 144 L.Ed.2d 778 (1999) (holding Iowa's drug tax constitutional under *Kurth Ranch* ). The fact that only dealers must pay the tax is reflective

of the "legislative concern that this flourishing underground economy not operate on a tax-free basis." *Gulledge,* 896 P.2d at 385. The Kansas drug tax is imposed only on dealers, who supposedly profit from engaging in an untaxed, illegal enterprise.[5]

Petitioner argues the Kansas tax is dependant upon the commission of a crime regardless of whether only dealers are taxed. The definition of a dealer requires that the person possess the drugs "in violation of Kansas law." *See* Kan.Stat.Ann. § 79–5201(c) (1997). The definition "not only assumes a crime has been committed, but also presupposes that the offending party has been arrested, charged and convicted." *Wilson v. Dep't of Revenue,* 169 Ill.2d 306, 214 Ill.Dec. 849, 662 N.E.2d 415, 420 (1996) (holding Illinois's drug tax unconstitutional). The court acknowledges that possessing drugs is a crime and commission of that crime is a prerequisite to paying the tax. However, Kansas does not tax mere drug possession. If Kansas taxed the crime of drug possession, the Kansas tax, like Montana's, would be assessed to all those who possess illegal drugs, not just those who possess in large enough quantities to be considered dealers.

As to the second punitive feature, the Kansas drug tax is due immediately upon acquisition of the requisite amount of drugs, and is not conditioned upon arrest of the individual. *Id.* at 385; Kan.Stat. Ann. § 79–5201(c) (1997).[6] The tax "is intended to be assessed when the taxpayer is in possession of the property." *Gulledge,* 896 P.2d at 385. Petitioner argues the Kansas tax, when applied, has the

cent penalty for failure to pay transient dealer tax); Kan.Stat.Ann. § 79–3228(d) (1997) (100 percent penalty for failure to timely pay income tax); Kan.Stat.Ann. § 79–3322(a) (1999 Supp.) (100 percent penalty for failure to pay cigarette tax).

4. Kan.Stat.Ann. § 79–5201(c) defines a dealer as "any person who, in violation of Kansas law, manufacturers, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana...."

5. Taxing only the those engaged in "business" is not uncommon. The drug tax can be compared to the Kansas' retailers sales tax which imposes the tax on those involved in the business of sales, not on most "isolated or occasional sales." *See* Kan.Stat.Ann. § 79–3606 (1999 Supp.).

6. Kan.Stat.Ann. § 79–5201(d) provides that "[t]axes imposed upon marijuana ... by this act are due and payable immediately upon acquisition or possession in this state by a dealer."

same effect as Montana's requirement of arrest because less than .41 percent of dealers pay the tax prior to arrest. The fact that the tax is essentially "self-assessed," and many dealers refuse to pay the tax, does not transform the tax into one that is assessed only upon criminal prosecution. As stated by the Connecticut Supreme Court:

> The taxpayer's voluntary choice to ignore his or her tax obligations should not be the determinative factor in evaluating whether Connecticut's tax constitutes punishment in double jeopardy context.... It would be anomalous indeed if persons conducting an illegal business were excused from the payment of a tax on that business because the failure to pay the tax was not discovered, as a result of their own dereliction, until after they had been arrested and double jeopardy protection attached.

*Covelli v. Comm'r of Revenue Services,* 235 Conn. 539, 668 A.2d 699, 706 (1995), *vacated and remanded Covelli v. Crystal,* 518 U.S. 1031, 116 S.Ct. 2577, 135 L.Ed.2d 1092 (1996), *on remand,* 239 Conn. 257, 683 A.2d 737 (1996).

Petitioner also argues that under both Montana and Kansas drug laws, the taxpayer will not be allowed to keep the drugs upon discovery regardless of whether the drug tax is paid. Therefore, there is no distinction in the fact that the Kansas tax is "due" upon acquisition of the drugs rather than upon arrest. The court disagrees. While it is true that the taxpayer can not keep the drugs upon discovery, the tax is intended to be paid while the taxpayer is in possession of the drugs and participating in the "flourishing underground economy" of illegal drugs.

An additional feature of the Kansas drug tax, not discussed by the Kansas court, is that the Kansas statute forbids the Department of Revenue from revealing any information given by a taxpayer and prohibits the use of such information in any criminal proceeding. Kan.Stat.Ann. § 79–5206 (1997).[7] The tax is also assessed by the Department of Revenue independently of the criminal prosecution. *Cf. Stennett v. State,* 905 S.W.2d 612 (Tex.App.1995) (Texas drug tax, which provided for prosecutor approval of tax case settlement and prosecutor request of postponement of tax case pending the outcome of the criminal case, was held unconstitutional).

Petitioner has cited several persuasive opinions in which state courts have found state drug taxes unconstitutional under *Kurth Ranch.*[8] However, there are an equal number of opinions in which states have upheld drug taxes similar to the Kansas drug tax because the drug tax statutes lacked the unusual features of Montana's tax.[9] The Eighth Circuit has found Iowa's drug tax constitutional, applying the same "unusual feature" analysis used by the Kansas court. *Padavich,* 162 F.3d at 523, *cert. denied, Padavich,* 527 U.S. 1025, 119 S.Ct. 2374, 144 L.Ed.2d 778 (1999). In light of the conflicting opinions and the

7. Kan.Stat.Ann. § 79–5206 provides "[n]either the director of taxation nor a public employee may reveal facts contained in a report or return required by this act, nor can any information contained in such a report or return be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this act from the taxpayer making the return."

8. The following courts, relying on *Kurth Ranch,* have found their drug tax statutes unconstitutional: *Wilson,* 214 Ill.Dec. 849, 662 N.E.2d at 415; *Bryant v. State,* 660 N.E.2d 290 (Ind.1995); *Desimone v. Nevada,* 111 Nev. 1221, 904 P.2d 1 (1995); *Ward v. State,* 915 S.W.2d 941 (Tex.App.1996); *Stennett,* 905 S.W.2d at 612.

9. Relying on *Kurth Ranch,* the following courts have held drug tax statutes similar to the Kansas statute constitutional: *Padavich,* 162 F.3d at 523, *cert. denied,* 527 U.S. 1025, 119 S.Ct. 2374, 144 L.Ed.2d 778 (1999); *Milner v. State,* 658 So.2d 500 (Ala.Civ.App. 1994); *State v. Lange,* 531 N.W.2d 108 (Iowa 1995); *State v. Stubblefield,* 249 Neb. 436, 543 N.W.2d 743 (1996); *State v. Ballenger,* 123 N.C.App. 179, 472 S.E.2d 572 (1996); and *McMullin v. South Carolina Dep't of Revenue & Taxation,* 321 S.C. 475, 469 S.E.2d 600 (1996).

discussion above, the court cannot say that the Kansas Supreme Court "decided the [double jeopardy] question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Gonzales v. McKune,* 76 F.Supp.2d 1222, 1225–26 (D.Kan.1999) (citing *Roberts v. Ward,* No. 98–6066, 1999 WL 162751, at *3 (10th Cir. March 25, 1999)).

The Kansas Supreme Court decision is entitled to substantial deference. *Houchin v. Zavaras,* 107 F.3d 1465, 1470 (10th Cir.1997). The court finds that the Report and Recommendation adequately and correctly determined this issue. The court will, therefore, adopt Magistrate Judge Walter's findings on this issue.

## III. FOURTH AMENDMENT CLAIM

### A. Relevant Facts

The state trial court made the following findings of fact following a hearing on petitioner's motion to suppress:

1. On June 22, 1993, David Zellmer, a Sheriff's Deputy and a member of the Ellis County Drug Enforcement Unit was called out of a meeting to talk to a man by the name of Robert Kiehl.

2. Deputy Zellmer did not know Kiehl well, and had only met him once before, approximately two weeks prior to June 22, 1993. On this earlier occasion, Detective Tom Meiers of the Hays Police Department asked Zellmer to take Kiehl home in an unmarked car. Kiehl was a witness in an investigation being carried on by Detective Meiers. This investigation was unrelated to any of the matters presented in the above captioned case.

3. During the course of the June 22, 1993 conversation, Kiehl told Zellmer that Roy Jensen was selling marijuana and growing it in Jensen's home. Kiehl further stated that he had been to Jensen's home with Chad Weilert, and that Weilert had purchased $200.00 or $250.00 worth of marijuana from Jensen. At this time, Kiehl stated that he saw 50 to 100 marijuana plants in Jensen's

basement, and described the conditions under which these plants were being grown.

4. On the morning of June 23, 1993, Deputy Zellmer had Kiehl appear at the Ellis County Law Enforcement Center. Zellmer interviewed Kiehl. During this interview, Kiehl gave an accurate description of Roy Jensen, with whom Zellmer was acquainted. Kiehl also described certain vehicles which belonged to Jensen, described Jensen's home, and the general area in Hays, Kansas where the Jensen home was located. Kiehl did not know the street address of the Jensen home.

5. Zellmer, in an effort to corroborate Kiehl's story, put Kiehl in Zellmer's vehicle, with Zellmer driving, and asked Kiehl to direct him to the Jensen home. Kiehl did so, and Deputy Zellmer was able to observe the Jensen home, which matched Kiehl's previous description. The motor vehicles previously described by Kiehl were at the Jensen residence.

6. At some point in time after the June 22, 1993 conversation between Deputy Zellmer and Kiehl, Zellmer contacted Detective Jim Braun of the Hays Police Department, also a member of the Ellis County Drug Task Force. Braun was asked by Zellmer to assist in the investigation.

7. Additional means of corroborating Kiehl's story were considered. Detective Zellmer considered checking Jensen's city water bill and his electric bill to determine whether water and electricity consumption were consistent with a marijuana growing operation. Investigation determined that Jensen had a water well at his home, and therefore city water usage information was unavailable or would not be reliable. Midwest Energy, which supplies power utilities to Jensen's home, would not release power consumption information without a warrant.

8. Deputy Zellmer and Detective Braun decided that Kiehl should person-

ally appear before Judge Tom Scott' of the Ellis County District Court, as neither officer knew Kiehl well, and they were unable to find any additional corroboration for his story. The officers desired that Judge Scott be able to see and hear Kiehl's testimony, and be able to reach his own conclusions about Kiehl's reliability.

9. Kiehl appeared before Judge Scott on June 23, 1993 and gave testimony under oath in support of an application for a search warrant authorizing a search of Jensen's home. A search warrant was issued by Judge Scott on that date.

10. As a result of a search of the Jensen home under authority of the warrant, marijuana and paraphernalia were found; however, no growing marijuana was found in the basement of the Jensen home. The only growing plant that was recovered as a result of the search was a plant growing in the back yard of the Jensen residence.

11. As a result of items found in the search conducted, Jensen was charged in this case.

12. Robert Kiehl was not at any time relevant to this case a law enforcement officer or government employee. He was not acting at any time relevant hereto on behalf of any governmental agency, or in any capacity, or under any circumstances by virtue of which his actions could be considered governmental action.

13. Neither Deputy Zellmer nor Detective Braun knew or had reason to know of any matter in Kiehl's background which would cast doubt on his veracity or reliability, including, but not limited to, any knowledge of mental disease, disability or treatment history.

14. The two officers did not tell Judge Scott, at the time the application for search warrant was being considered, that they had attempted to corroborate Kiehl's testimony through water and electricity bills.

15. Defendant filed a motion to suppress the evidence seized in the search on the basis that the testimony of Kiehl in support of the search warrant was perjured. In support of this motion, defendant attached the sworn testimony of Chad Weilert and the affidavit of Roy Jensen.

16. The law enforcement personnel who executed the search warrant, and all officers connected with the warrant and the search did so in good faith reliance upon the search warrant.

*Jensen,* 915 P.2d at 111–12. In addition to the above facts, the Kansas Supreme Court found the following additional facts noteworthy:

The application for search warrant is dated Wednesday, June 23, 1993, at 10:34 a.m. Detective Jim Braun was the affiant. In the space for attested facts upon which the application is based, there is only the notation, "(oral affidavit)." The "oral affidavit" was made when Detective Braun was sworn in and Kiehl and Deputy Zellmer gave sworn testimony in the presence of a district judge. Questions were asked of them by the county attorney.

Kiehl stated that he had gone to Jensen's residence on Saturday, June 19, with Chad Weilert. Kiehl said they went there because Weilert wanted to spend approximately $200 to $250 for a bag of marijuana.... Kiehl saw Jensen hand Weilert a sandwich bag of marijuana. Kiehl also described seeing 50 to 100 marijuana plants in containers.... Kiehl testified that he had not been promised anything in exchange for the information about Jensen, that his giving the information was completely voluntary, and that he had no personal animosity toward Jensen....

Deputy Zellmer testified that his only contact with Kiehl before June 22 was when he had spent about 5 minutes driving Kiehl home in an undercover vehicle at the request of Detective Meiers. Zellmer also testified that he had understood from Kiehl that he had been in Jensen's basement on Monday evening

rather than on Saturday. And finally, Zellmer stated that Keihl's description of the lights in Jensen's basement was "somewhat vague."

*Id.* at 112.

### B. Analysis

■ Petitioner claims he was denied his opportunity to fully and fairly present his Fourth Amendment claim when the state court refused to grant a *"Franks* hearing" to determine whether the testimony offered by Robert Kiehl in support of the application for a search warrant of petitioner's residence was false. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Petitioner argues that Magistrate Judge Walter incorrectly determined that he was not entitled to a *Franks* hearing because (1) Kiehl's testimony in support of the search warrant was false and (2) the officers failed to disclose to the court their inability to corroborate the information provided by Kiehl or to establish his reliability.

■ A defendant may not generally dispute the matters alleged in the affidavit supporting the search warrant. *State v. Jacques,* 225 Kan. 38, 587 P.2d 861, 866 (1978). In *Franks v. Delaware,* the Supreme Court created an exception to the general rule, allowing impeachment of a supporting affidavit "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with the reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks,* 438 U.S. at 155, 98 S.Ct. 2674. Following *Franks,* the Kansas Supreme Court allows for a challenge if the allegation is "supported by an offer of proof under oath that the affidavit or application for a search warrant contains material statements of deliberate falsehood or reckless disregard for the truth." *Jacques,* 587 P.2d at 866.

■ Petitioner claims that Kiehl is the "affiant" for purposes of challenging the search warrant. However, the *Franks*

hearing is reserved for those situations where the affiant is a government agent. "The deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. The purpose of the *Franks* hearing is to detect and deter the issuance of warrants based on information which is the result of governmental misconduct. *Jensen,* 915 P.2d at 114–15 (citing *State v. Moore,* 54 Wash.App. 211, 773 P.2d 96 (1989)). Therefore, only government misconduct can be the basis for a *Franks* challenge. "It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit." *United States v. Owens,* 882 F.2d 1493, 1499 (10th Cir.1989).

The affiant of the warrant issued against petitioner was Detective Jim Braun. The state court correctly found that because Keihl was not a government agent, Keihl's false statement could not provide a basis for attack of the warrant. The state court's conclusion is not contrary to or an unreasonable application of the Supreme Court decision of *Franks v. Delaware.* Therefore, the Magistrate Judge correctly determined that petitioner was not entitled to a *Franks* hearing simply because Kiehl's testimony was false.

■ Petitioner also argues that Magistrate Judge Walter failed to address his argument that a *Franks* hearing is required because the officers intentionally omitted information regarding Keihl's reliability and veracity. However, Magistrate Judge Walter recognized that the state court found that the officers involved in the application of the search warrant had no knowledge of Kiehl's mental disability or treatment history which would warn them of Kiehl's lacking veracity and reliability. These findings of fact are presumed to be correct for purposes of habeas review, absent clear and convincing evidence to the contrary. 28 U.S.C.

§ 2254(e)(1). No such clear and convincing evidence was presented to Magistrate Judge Walter or to this court. If the officers had omitted such information, the omission would likely have risen to the level of a deliberate false statement.

 Petitioner argues that the officers intentionally omitted information that they had failed at their attempts to corroborate Kiehl's veracity or reliability. Petitioner specifically focuses on the officers attempts to check his water and electric bills. The officers admitted that they had not been able to establish Keihl's reliability or veracity, nor did they bring this to the attention of the issuing judge. The county attorney questioned the officers and Kiehl but never stated that the officers had attempted unsuccessfully to verify the information. By bringing Kiehl before the judge, the officers suggested the lack of corroboration and verification, leaving it to the judge to determine. *Jensen*, 915 P.2d at 116. The omission of such information by the officers is at most negligence. "Allegations of negligence or innocent mistake are insufficient" to allow an attack on the supporting affidavit. *Franks*, 438 U.S. at 172, 98 S.Ct. 2674. Petitioner has failed to "make a substantial showing that [the officers] knew of, or recklessly disregarded the truth." *Owens*, 882 F.2d at 1499. If the judge failed to use that opportunity to elicit information to form an opinion as to Kiehl's reliability and veracity, that is the fault of the judge and not the officers. *Jensen*, 915 P.2d at 116.

The state court's application and interpretation of *Franks* is reasonable. Because petitioner has not shown that the state court's conclusion is contrary to or an "unreasonable application of, clearly established federal law, as determined by the Supreme Court," federal habeas relief must be denied. 28 U.S.C. § 2254(d)(1).

**IT IS THEREFORE BY THE COURT ORDERED** that the Report and Recommendation (Doc. 13) is accepted and adopted. Petitioner's habeas corpus petition is dismissed and relief is denied.